IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHARLES D. PRICHARD                                          PLAINTIFF

v.                        Civil No. 04-4089

H.L. PHILLIPS, Miller County
Sheriff; and JEFF BLACK, Warden,
Miller County Detention Center                              DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Charles Prichard, a former inmate of the Miller County Detention Center, brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Prichard contends his constitutional rights were violated while he was an inmate of the Miller County Detention Center when the Defendants failed to protect him from attack by a fellow inmate. Prichard also contends Jeff Black retaliated against him for voicing security concerns, complaints about the handling of grievances, complaints about access to legal materials, filing a civil rights lawsuit, and/or helping another inmate file a civil rights lawsuit.

On October 11, 2005, Defendants filed a motion for summary judgment (Doc. 37). By order entered on November 7, 2005 (Doc. 44) Prichard was directed to complete, sign, and return an attached questionnaire that would serve as his response to the summary judgment motion. On December 1, 2005, Plaintiff's response to the court's questionnaire (Doc. 45) was filed. The summary judgment motion is currently before the undersigned for issuance of this report and recommendation.

# I. BACKGROUND

Prichard was booked into the Miller County Detention Center (MCDC) on January 29, 2004. *Plaintiff's Response* (Doc. 45) (hereinafter *Resp.*) at ¶ 1(A). He was incarcerated because of pending criminal charges. *Id.* at ¶ 1(B). He was convicted by a jury on July 22, 2004. *Id.* He remained incarcerated at the MCDC until he was transferred to the Arkansas Department of Correction (ADC) on August 10, 2004. *Id.* at ¶ 2.

On or about April 1, 2004, Prichard was attacked by Inmate Nard. *Resp.* at ¶ 3(A). Prichard was knocked unconscious and helped into his bunk by fellow inmates. *Id.* at ¶ 3(B). The day after the assault, Prichard had no memory of it occurring. *Id.* at ¶ 11.

The next morning, Prichard states his head was swelling, his eyes started to turn black, and his nose and ears bled. *Resp.* at ¶¶ 3(B) & 5. Prichard also had a headache. *Id.* at ¶ 3(B). Prichard indicates he lost his balance and still suffers from headaches, loss of balance, and memory loss. *Id.*

On April 1, 2004, Prichard was treated at Wadley Health System for allergies. *Resp.* at ¶ 12(A). According to Prichard, he was initially seen by Nurse Porter and Dr. Stringfellow and misdiagnosed as having an allergy. *Resp.* at ¶ 5. Prichard also states the "attack caused numerous ailments to come to the top with my body and mind (memory) and now kidney is infected again." *Id.* Although he did not mention an assault, Prichard maintains his injuries were reported to medical staff. *Id.* at ¶ 12(B). Later in April, Prichard was treated again and an x-ray revealed that he had a fractured skull. *Id.* at ¶ 5 & ¶ 13 (Prichard does not recall the exact date this treatment occurred on).

Prichard has no reason to believe Defendants were present during the attack. *Resp.* at ¶ 4. Prior to the attack, Prichard had never been threatened by Nard and had not reported any problems with Nard to the jail staff. *Id.* at ¶ 6 & 8.

Prichard maintains Nard had attacked other inmates before April 1st. *Resp.* at ¶ 9. Prichard states Nard was moved to the medical pod because he and other inmates jumped an inmate in another pod. *Id.* Prichard does not know the names of the other inmates Nard attacked or the dates of these alleged attacks. *Id.* However, he states Nard had "shown through prior altercations at the new and old jail [that] he was a threat to all inmates." *Id.* at ¶ 10.

Prichard states he saw plenty of attacks while at the MCDC. *Resp.* at ¶ 9. Prichard, however, gives no details regarding these alleged attacks.

When he returned to the MCDC on a gun charge, he states they did not put him in the "aggravated pod" and Carl Story was in the process of having his nose and sinus re-constructed. *Resp.* at ¶ 9.

Approximately one week after Prichard's last discussion with Jeff Black, the warden, Prichard states he was moved from the medical pod to the "aggravated tank" (or A Max) in retaliation for his having voiced complaints. Prichard states the aggravated tank is an area of the facility used to house inmates with serious charges such as murder or armed robbery or those inmates who had been involved in fights. *Resp.* at ¶ 14. Prichard indicates he remained in the aggravated tank until his transfer to the ADC. *Id.*

At the time, Prichard states he was charged with possession of a controlled substance, possession of drug paraphernilia, and possession of a firearm by certain persons. *Resp.* at ¶ 14. According to Prichard, his transfer to the aggravated tank came not long after he asked for access

to legal books and he and Inmate Dilday had their requests to proceed in forma pauperis completed. *Id.* Prichard states when Sgt. Janice came to move him he asked why he was being transferred and she replied that it was on Black's orders and he didn't need a reason. *Id.* While Prichard was in Black's office, Prichard states he told Black he was trying to help himself and other inmates who were attacked and would be attacked. *Id.* Prichard indicates Ms. Melissa George, Mike Wade, and Dilday were all present. *Id.* Prichard states he had not caused any problems. *Id.* According to Prichard, soon after that Dilday was released. *Id.*

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III. DISCUSSION

Defendants have moved for summary judgment. First, Defendants contend they have been sued in their official capacities only. Second, Defendants contend they were completely unaware of there being any threat of harm to the Plaintiff or of any excessive risk to inmate health or safety in general. Third, they contend no retaliation claim is stated. We will address each claim separately.[1]

### *Official and Individual Capacity Claims*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.

In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

---

[1]Defendants address two additional claims in their summary judgment motion; a denial of access claim and a claim based on alleged inadequacies in the grievance procedure. These claims, however, were dismissed by order entered on December 16, 2004 (Doc. 13).

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

A review of the complaint in this case shows that plaintiff has failed to specifically plead whether the individually named defendants were being sued in their official or individual capacity. However, the court has an obligation to liberally construe a pro se complaint. *Haines v. Krener*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). *See also White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding pro se petition should be "interpreted liberally and . . . should be construed to encompass any allegation stating federal relief"). In so doing, we must keep in mind that the plaintiff is without legal expertise and he prepared his own pleading. *Bracken v. Dormire*, 247 F.3d 699, 704 (8th Cir. 2001). For this reason, despite the teachings of the Eighth Circuit cases that

require a plaintiff to specifically plead an individual capacity claim, we construe Prichard's complaint to be asserting both individual and official capacity claims.

### *Failure to Protect*

Defendants contend there was no reason to suspect that Prichard would be attacked by Nard. Additionally, Defendants argue that there is no evidence that they knew of and disregarded an excessive risk to inmate health or safety.

At the time of the attack, Prichard was a pretrial detainee. Due process 'protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted.'" *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988). Similarly, the Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). In addressing failure to protect claims brought by pretrial detainees, the Eighth Circuit has noted that the pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *Perkins*, 161 F.3d at 1129-1130. *See also Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by prisoners.).

In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

An Eighth Amendment claim for failure to protect is comprised of two elements.
First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all

> prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendants'] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595. *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail, Prichard must show: (1) that his incarceration with Nard posed a substantial risk of serious harm, and (2) each of the Defendants knew of and disregarded an excessive risk to Prichard's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003). To establish the second component, Prichard must show that each Defendant acted, or failed to act, with deliberate indifference to Prichard's safety. *Id.* Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Further, the Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Id.* at 740-741 (internal quotation marks and citation omitted).

In *Perkins v. Grimes*, 161 F.3d 1127 (8th Cir. 1998), the district court "agreed that defendants were on notice that Wilson was a disruptive inmate," but found defendants "had no notice that Wilson posed a threat of serious injury to Perkins because Perkins did not effectively alert them that he faced such a threat." *Id.* at 1130. Further, the district court found that "the defendants periodic cell checks yielded no information that would have put them on such notice."

*Id.* The Eighth Circuit found no clear error. *Id.* It noted that "[a]lthough the testimony indicated that Wilson was an easily provoked detainee, the evidence also shows that Perkins and Wilson had previously been housed together without incident and that Perkins' jailers neither knew, or had reason to know, that Wilson was a violent sexual aggressor, either on this or on a previous occasion." *Id.*

In this case, we believe we have no choice but to grant Defendants' motion for summary judgment on this claim. While Prichard maintains Nard attacked other inmates, he has provided the court with absolutely no information regarding these attacks other than the conclusory statements that he believes an attack on another inmate was the reason Nard was moved to the medical pod and the attacks occurred both before and after the jail moved to a new facility. *Resp.* at ¶ 9.

Prichard indicates he was unable to obtain this information from Defendants through discovery and unable to obtain information regarding other attacks he believes occurred at the jail. However, the docket sheet reveals Plaintiff never filed a motion to compel. This is true despite the fact that Plaintiff filed various other motions seeking relief from the court including a motion seeking additional time to respond to the summary judgment motion (Doc. 42). We note Defendants submitted two motions to compel further discovery from the Plaintiff which were ruled on by the court. It is obvious from this latter fact that the Plaintiff knew, or should have known, what a motion to compel was and that the court would direct a party to provide further discovery responses in appropriate circumstances.

In short, the court has nothing more than Prichard's vague and conclusory statements to suggest Nard had a known propensity for violently attacking fellow inmates or that other attacks

occurred at the facility that served to put Defendants on notice that there was a substantial risk of serious harm to Prichard and for other inmates. *See e.g., Lefkowitz v. Citi-Equity Group, Inc.,* 146, F.3d 609, 611 (8th Cir. 1998)("Because Mr. Lefkowitz bears the burden of proof at trial, he had to designate 'specific facts showing that there is a genuine issue for trial.' CEG need not support its summary judgment motion with affidavits negating Mr. Lefkowitz's claim. Because Mr. Lefkowitz's response to the summary judgment motion contained mere conclusory statements, we conclude summmary judgment was properly granted."); *Helfter v. UPS, Inc.*, 115 F.3d 613, 616 (8th Cir. 1997)(conclusory statements in affidavits and depositions, standing alone, are insufficient to withstand summmary judgment). On the record before us, we cannot say there are genuine issues of material fact as to whether Prichard was incarcerated under conditions posing a substantial risk of serious harm or as to whether Defendants recklessly disregarded the risk.

### *Retaliation*

Because nearly every otherwise routine administrative decision may potentially be viewed as a retaliatory act, it has been recognized that "[r]etaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). *See also Smith v. Deckelbaum*, 2000 WL 1855128, *3 (S.D.N.Y. Dec. 19, 2000)(defining retaliatory acts as "otherwise routine administrative decisions [that] are made in retaliation for the exercise of constitutionally protected rights."). Further, the courts have recognized that prison officials must have broad administrative authority. *Graham*, 89 F.3d at 79. For this reason, it has been said that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)(not every response to a prisoner's exercise of a constitutional right is actionable). *See also Atkinson v. Bohn*,

91 F.3d 1127, 1129 (8th Cir. 1996)(per curiam)(Speculative and conclusory allegations cannot support a retaliation claim).

The retaliatory conduct at issue in this case is Prichard's transfer from the medical pod to the "aggravated tank" or A Max. In *Goff v. Burton*, 7 F.3d 734 (8th Cir. 1993), the Eighth Circuit discussed both the standard applicable to retaliatory transfer cases and the standard applicable to retaliatory discipline cases. With respect to retaliatory transfer cases, it noted that "[a]lthough a prisoner enjoys no constitutional right to remain at a particular institution, and although generally prison officials may transfer a prisoner for whatever reason or no reason at all, a prisoner cannot be transferred in retaliation for the exercise of a constitutional right." *Id.* at 737 (internal quotations and citations omitted).

In retaliatory transfer cases, the court noted that the "prisoner must face a substantial burden in attempting to prove that the actual motivating factor for his transfer was the impermissible retaliation." *Goff*, 7 F.3d at 737 (internal quotation marks and citation omitted). It noted that the prisoner could not prevail by merely showing that his protected conduct was a motivating factor behind the transfer decision; Instead, the prisoner must show that but for the impermissible motive the transfer would not have occurred. *Id.*

It noted that "[t]he extent of this heavy burden was made clear in *Ponick* [*v. Bogan*, 929 F.2d 419 (8th Cir. 1991)] when this court rejected the prisoner's claim of retaliation–even where the prisoner's filing of lawsuits against the prison officials was 'clearly a factor' in the transfer–because the prisoner failed to prove that the transfer would not have been made 'but for' the prisoner's litigation activities." *Goff*, 7 F.3d at 737 (*quoting Ponick*, 929 F.2d at 420). The court also made clear that a burden-shifting analysis does not apply. *Goff*, 7 F.3d at 737-738. Instead, it stated the

"burden is on the prisoner to prove that but for an unconstitutional, retaliatory motive the transfer would not have occurred." *Id.* at 738.

In this case, Prichard contends the transfer was retaliatory because it occurred about a week after he had an application to proceed in forma pauperis completed by Black and informed Black that he was trying to help himself and others who were attacked or would be attacked. *Resp.* at ¶ 14. This is simply insufficient to show the existence of a genuine issue of material fact on this claim. *See e.g., Farver v. Vilches*, 155 F.3d 978, 979 (8th Cir. 1998)(summary judgment for prison officials appropriate where inmate produced no evidence he was transferred because he filed grievance, rather than because he indicated he was not medically capable of working in jail's kitchen). Every action taken after a civil rights complaint is filed or an inmate voices complaints is not the equivalent of a retaliatory action. We believe no genuine issue of fact exists as to whether the transfer would not have occurred but for Prichard's litigation and/or grievance related activities.

## IV. CONCLUSION

I therefore recommend that Defendants' motion for summary judgment be granted and this case dismissed.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of January 2006.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE